## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ANNA WHEELER, on behalf of her child, L.W., a minor,<br><br>    *Plaintiffs,*<br><br> v.<br><br>GRANT PUBLIC SCHOOLS, by and through its Board of Education; DONNA ROBERTS (in her official and individual capacity); UNKNOWN BUS DRIVER (in her official and individual capacity); AMBER SALAZAR (in her official and individual capacity); DOES 1-10 (in their official and individual capacity);<br><br>    *Defendants.* | CASE NO.<br><br>**COMPLAINT**<br>(1) Title IX Violation<br>(2) Violation of S1983 - Fourteenth Amendment<br>(3) Violation of §1983 - State Created Danger<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

This is an action arising from the negligence of faculty and staff at Grant Public Schools of Grant City, Michigan. Plaintiff is seeking damages for Defendant's Title IX Violation of due process and protected rights under the Fourteenth Amendment.

## PARTIES

1. L.W. is a resident of the State of Michigan and at all times material to this litigation has been, and is presently, a minor child.

2. The Complaint is filed by and through his mother, Anna Wheeler ("Plaintiff"), on behalf of her minor son L.W.

3. Defendant Grant Public Schools ("GPS") is a public school district receiving federal funds in Grant City, Michigan.

4. Defendant Donna Roberts ("Roberts") is employed as the Transportation Director of the Grant Public School Transportation Department by Grant Public School District and at all times relevant to this litigation.

5. Defendant **Unknown Bus Driver** is employed as a Bus Driver for the Grant Public Transportation Department of the Grant Public School District and at all times relevant to this litigation.

6. Defendant Amber Salazar ("Salazar") is employed as a Bus Aid for the Grant Public School Transportation Department by Grant Public School District and at all times relevant to this litigation.

## JURISDICTION & VENUE

7. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States. In

accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims.

8. Defendant GPS conducts business within the State of Michigan.

9. All Individual Defendants employed by GPS, because they were employees of GPS, are relevant herein and personally violated certain rights and policies, the effects of which were felt in the State of Michigan.

10. Venue in this action is properly in the Western District of Michigan because the events relevant to this action occurred primarily within the geographical confines of the Western District of Michigan.

## FACTUAL ALLEGATIONS

**Plaintiff's Education**

11. From 2017 to 2023, L.W. was a student within GPS.

12. For the 2023-2024 school year, L.W. was a student at Grant Middle School, located within the GPS.

13. In 2022 L.W. was diagnosed with Cognitive Delay Impairment.

14. L.W. is non-verbal and has mild hearing loss in both ears.

15. Prior to L.W. entering middle school, discussions between GPS and the other surrounding school districts regarding a centralized special needs program were in motion. Due to spatial availability and resources for children such as L.W.,

in 2024, the Newaygo County School District became designated as the facility to accommodate the special needs program for GPS, Fremont, and Whitecloud.

16. In September of 2024, all schools participating in the special needs program were to utilize the same bus transportation system to Newaygo Middle School, sharing the morning and afternoon transport. The adult students with special needs that attended Newaygo County Career Tech Center also utilized this system, riding the bus with the minor children for both the morning and afternoon rides. The 2024 academic school year was the first year L.W. attended the special needs program at the Newaygo County School District.

**Bus Incident #1**

17. On January 11, 2024, Plaintiff received a call from the Transportation Director of GPS, Defendant Roberts. Roberts advised Plaintiff that there was an "incident" on the afternoon bus.

18. A bus aid reported hearing moaning sounds that seemed sexual in nature.

19. Upon looking up, the aid noticed that a "boy" was standing in front of L.W.

20. Roberts advised Plaintiff that although nothing seemed out of the ordinary, an investigation would be carried out and that she would keep Plaintiff posted.

4

21. On January 12, 2024, Plaintiff emailed Roberts requesting a status update as to the investigation. Roberts responded with no updates to provide.

22. On January 12, 2024, Plaintiff received a call from the Superintendent of GPS, Brett Zuver ("Zuver").

23. Zuver advised video footage was being surveyed and that he would report back once completed.

24. On January 12, 2024, Roberts emailed Plaintiff advising that it appeared that the "boy", a 20-year-old autistic student appeared to be standing in front of L.W.

25. Roberts further advised that the boy had previously been caught masturbating.

26. On January 13, 2024, Plaintiff emailed Roberts advising that L.W. would still utilize the afternoon bus transport under the conditions that L.W. would move to the front of the bus and that the boy would be supervised. Roberts assured Plaintiff that this was the plan.

27. On January 19, 2024, Plaintiff sent a follow-up email to Roberts and Zuver regarding a status update of the investigation, but to no avail.

28. Dan Simon ("Simon") and Carol Dawson ("Dawson") (collectively "Title IX Coordinators") failed to reach out to Plaintiff regarding the required Title IX process.

5

Defendant GPS, Simon and Dawson failed to do a Title IX investigation as is required by federal law.

**Bus Incident #2**

29. On February 23, 2024, Roberts contacted Plaintiff via phone, advising that as of February 26, 2024, L.W. would no longer ride the afternoon bus and that his morning bus would now be taken to and from school.

30. On February 26, 2024, Plaintiff received a call from Resource Officer, Justin Visser ("Visser") advising that on February 22, 2024, another incident between the same boy and L.W. occurred while riding the afternoon bus.

31. On March 4, 2024, Visser had an in-home visit with Plaintiff. Visser advised Plaintiff that the new Superintendent of GPS, Kevin Atkin ("Atkin"), informed him of a sexual assault that took place on February 22, 2024, and that a Title IX Investigation had been opened.

32. The incident of February 22, 2024, was reported by a male aid substitute who was supervising the boy. The substitute aid was called to the front of the bus by Defendant Unknown Bus Driver ("Bus Driver"), requesting assistance with maneuvering a wheelchair. When the substitute aid walked back to where he was supervising the boy, the boy stood up from kneeling in front of L.W. The aid noticed L.W. pulling up his pants and demanded that another individual report the incident immediately.

6

33. Defendant Salazar was at all times, to accompany the boy, controlling his impulsive behavior and ensuring not only the boy's safety, but also the safety of others.

34. According to reports and statements made relating to the sexual misconduct of the boy, Salazar was always seated with her back to the boy and not in an observable position as she should have been.

35. On March 5, 2024, Visser advised Plaintiff that he was taking his report to the Newaygo County Prosecuting Attorney.

**The Investigation**

36. On March 8, 2024, Plaintiff received an email from Grant County's Principal, Daniel Simon ("Simon"), of Grant High School. Simon advised Plaintiff that he was conducted to aid in a Title IX Investigation.

37. On March 12, 2024, Simon worked with Visser to further investigate the incidents surrounding, and leading up to, the February 22, 2024 sexual assault.

38. On April 13, 2024, Visser messaged Plaintiff stating that an advocate from Open Arms Child Advocacy Center ("OAC Advocacy Center") trained in working with nonverbal autistic children would contact Plaintiffs.

39. On May 9, 2024, L.W. had a "Meet and Greet" with Nicole, an advocate from the OAC Advocacy Center.

40. On May 14, 2024, Nicole met with L.W. to evaluate his responses to the incidents surrounding the traumatic events that had occurred, as well as the impact that these events have had on L.W. emotionally, mentally, and physically. Despite numerous requests, Plaintiffs have no knowledge as to the results of the evaluation, nor have they been provided with a copy.

41. The boy sexually harassed L.W. on numerous occasions prior and leading up to the sexual assault that occurred on February 12, 2022.

42. Defendant Roberts knew of the sexual misconduct of the boy, advising that he had been previously found masturbating, and still did not enforce Defendant Salazar to perform her duties as hired, nor did Defendant Roberts take immediate action to ensure the safety of the minor children, all who are autistic and unable to protect themselves.

43. L.W. was not the only child affected by the boy's impulsive behavior. This lackadaisical behavior carried out by both Defendants Salazar and Roberts placed minor children directly in harm's way and victims of sexual abuse.

44. Defendants failed to put a no contact order in place.

45. On March 28, 2024, L.W. attended a school concert. The boy was also in attendance. While on stage, L.W. caught site of the boy and froze. L.W.'s aid had to rush to his side.

**Damages**

46. On March 14, 2024, Plaintiff took L.W. to his primary care physician, Dr. Brett Stacer ("Stacer" or "PCP") for a full evaluation.

47. L.W. suffered severe emotional damage and distress.

48. Since the occurrence of the sexual abuse, L.W. has refused to sleep alone and continues to suffer from nightmares.

49. Since the occurrence of the sexual abuse, L.W. refuses to give hugs to his family and displays an emotional disconnect.

50. For L.W. these traumatic events are extremely difficult to manage as emotions cannot be communicated due to his autism.

**Respondeat Superior and Agency**

51. Under Federal and Michigan law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

52. At all times relevant to this action, all individual Defendants were employed by GPS. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment with GPS.

53. At the time of this Complaint, only the individual Defendants themselves are aware of the exact role that each individual Defendant played in the events that are subject of the lawsuit. For this reason, only the individual Defendants

know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

## CAUSES OF ACTION

### FIRST COUNT – VIOLATION OF TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972
### (Against GPS only)

52. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

53. Title IX of the Education Act Amendments of 1972 (20 U.S.C. § 1681) prohibits discrimination based on sex in educational institutions receiving federal funding. At all times relevant to this action, GPS was a public school receiving federal financial funding.

54. At all times relevant to this action, GPS was a public school receiving federal funding.

55. 34 CFR §106.44 provides that such institutions must respond affirmatively to when a school official with the ability to take corrective measures receives actual knowledge that a student may have been discriminated against on the basis of sex.

56. Dan Simon ("Simon") and Carol Dawson ("Dawson") (collectively "Title IX Coordinators") failed to reach out to Plaintiff regarding the required Title IX process.

57. Defendant GPS, Simon and Dawson failed to do a Title IX investigation as is required by federal law.

58. The sexual harassment that L.W. endured at the hands of the offending classmate deeply traumatized L.W.

59. The trauma that L.W. experienced was compounded by the fact that L.W. was forced to share a bus with the offender on a daily basis.

60. The sexual harassment that L.W. endured had such a negative effect on L.W.'s mental state that it effectively deprived L.W. of the educational benefits provided by GPS.

61. The trauma that L.W. experienced rendered him unable to enjoy the full benefits of his education.

62. Defendant GPS had actual knowledge of the ongoing sexual harassment of L.W.

63. Multiple GPS staff had actual knowledge of the ongoing sexual harassment of L.W.

64. Defendant GPS was required under federal laws to initiate a Title IX investigation.

65. GPS acted with deliberate indifference regarding the sexual harassment in the following ways:

   a. Failing to complete an investigation after Bus Incident #1;

   b. Failing to separate the offending student and the victim, L.W., following Bus Incident #1;

   c. Failing to discipline the offending student;

   d. Keeping the offending student in the same bus as L.W.; and

   e. Placing L.W. and the offending student in the same educational setting such as at the school concert, causing harm to L.W.

66. The actions of Doe Defendants and Defendant GPS in permitting and failing to timely curtail, prevent, or investigate the sexual harassment against L.W. and by allowing a hostile school environment based on the fact that the offender and victim were both special needs constitutes a violation of Title IX.

67. Defendant GPS had, and has, the ability to exercise substantial control over both the offending student and the environment in which the sexual harassment and assault occurred.

68. The offending student's sexual harassment and assault were severe, pervasive, and objectively offensive.

69. Defendant GPS willfully avoided their obligations under Title IX.

70. Defendant GPS was legally required under Title IX to conduct a full and thorough investigation into the sexual harassment suffered by L.W. following Bus Incident #1.

71. As a result, L.W. was barred access to an equal opportunity to his education.

72. The emotional and physical harm that L.W. has suffered, and will continue to suffer, was caused directly and proximately by Defendants' unlawful conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for compensatory damages in amounts to be determined at trial and as are allowed under the statute;

(b) Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## SECOND COUNT – VIOLATION OF DUE PROCESS UNDER 42 U.S.C. §1983

73. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

74. 42 U.S.C. §1983 prohibits the deprivation of constitutional rights or rights secured by the laws of the United States by persons acting under the color of state law.

75. The Fourteenth Amendment of the U.S. Constitution provides in pertinent part, that "no person shall be deprived of life, liberty, or property without the due process of law," which includes "state-occasioned damage to a person's bodily integrity." *C.B. v. Bobo*, 659 So. 2d 98, 103 (Ala. 1995) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-52 (5th Cir. 1994)).

76. Public school officials who fail to take adequate precautions may amount to "deliberate indifference to the constitutional rights of students." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

77. As such, Defendants violated L.W.'s right to bodily integrity by failing to take adequate precautions which amounted to deliberate indifference to his constitutional rights as a student.

78. Defendants were acting under the color of law.

79. Defendants as people working with children on a daily basis were aware that L.W. was entitled to a liberty interest in bodily integrity.

80. Plaintiff suffered bodily harm, including sexual assault and mental anguish.

81. As a direct and proximate result of Defendants' actions, L.W. suffered bodily harm.

82. Defendant GPS as a public school district is vicariously responsible for actions of employees acting within the scope of their employment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, physical harm, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b) Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## THIRD COUNT – STATE CREATED DANGER
## UNDER 42 U.S.C. §1983

81. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

82. 42 U.S.C. §1983 prohibits the deprivation of constitutional rights or rights secured by the laws of the United States by persons acting under the color of state law.

83. Under the State Created Danger doctrine, plaintiffs can recover for private harms if they show: (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

84. The Defendants failed to remove the boy from the bus following the knowledge of the boy's propensity to engage in sexual violence.

85. Defendant placed L.W. at a high risk of danger by continuing to allow the boy direct access to L.W. while on the bus.

86. Defendants knew or should have known of the risk as they had knowledge of the boy's propensities prior to the acts of the boy detailed in this complaint.

87. As a direct and proximate result of Defendants' actions, L.W. suffered bodily harm.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, physical harm, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b) Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 25, 2024

                                              Respectfully submitted,

                                              */s/ Keith Altman*
                                              Keith Altman, Esq. (P81702)
                                              THE LAW OFFICE OF KEITH ALTMAN
                                              33228 West 12 Mile Road, Suite 375
                                              Farmington Hills, Michigan 48331
                                              Telephone: (248) 987-8929
                                              keithaltman@kaltmanlaw.com
                                              *Attorney for Plaintiff*